**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

APPELLANT PRO SE:

**VICTOR SALAZAR**
Michigan City, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**MONIKA PREKOPA TALBOT**
Deputy Attorney General
Indianapolis, Indiana

**FILED**

Aug 15 2012, 9:26 am

**CLERK**
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| VICTOR SALAZAR, | ) |
| | ) |
| Appellant-Petitioner, | ) |
| | ) |
| vs. | )    No. 79A02-1101-PC-150 |
| | ) |
| STATE OF INDIANA, | ) |
| | ) |
| Appellee-Respondent. | ) |

APPEAL FROM THE TIPPECANOE CIRCUIT COURT
The Honorable Donald L. Daniel, Judge
Cause No. 79C01-0910-PC-4

**August 15, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**KIRSCH, Judge**

Victor Salazar ("Salazar") appeals from the post-conviction court's denial of his petition for post-conviction relief, contending that the trial court abused its discretion in denying Salazar a full and fair hearing.

We affirm.

## FACTS AND PROCEDURAL HISTORY

The facts supporting Salazar's conviction, which were set forth in this court's memorandum decision on direct appeal, follow:

> On December 6, 2001, the State charged Salazar with two counts of armed robbery, [each as] a class B felony, intimidation while armed with a deadly weapon, a class C felony, and pointing a firearm, a class D felony, under cause number 79D01–0112–CF–122, which was subsequently transferred to cause number 79C01–0206–FC–0012 (Cause 0012). The State alleged that Salazar had robbed a Village Pantry convenience store and a White Castle Restaurant in Tippecanoe County.
>
> On December 12, 2001, Salazar was charged with thirteen drug-related offenses under Cause Number 79C01–0112–CF–0032 (Cause 0032) that related to various drug transactions with confidential informants who were working with the local police department. Thereafter, on February 4, 2003, the parties entered into a plea agreement, which called for Salazar to plead guilty to dealing in cocaine, a class B felony, and to dealing in a controlled substance, a class B felony, as charged in Cause 0032. In exchange, the State agreed to dismiss all remaining counts under that cause number and all charges under Cause 0012. The plea agreement provided that although the length of the sentence would rest within the trial court's discretion, the sentences would run consecutively.
>
> . . . .
>
> After concluding that the "aggravating factors significantly outweigh the mitigating factors," [A]ppellant's [A]pp. p. 85–86, the trial court sentenced Salazar to fifteen years of incarceration on each count. And, pursuant to the plea agreement, those sentences were ordered to run consecutively, resulting in an aggregate sentence of thirty years.

2

*Salazar v. State*, 79A02-0805-CR-464, slip op. at 1 (Ind. Ct. App. Dec. 31, 2008).

In his direct appeal, Salazar argued that the trial court abused its discretion in sentencing him and that his sentence was inappropriate. We affirmed Salazar's sentence in our memorandum opinion, and our Supreme Court denied Salazar's petition to transfer. Thereafter, Salazar filed a pro se petition for post-conviction relief, in which he claimed he had received ineffective assistance of both trial and appellate counsel. On May 6, 2010, the post-conviction court held a hearing during which procedural and discovery issues were addressed. The post-conviction court informed the parties that another hearing date would be set if there were other issues that needed to be resolved. Salazar asked the post-conviction court if he could submit his arguments with case law attached to aid the trial court in its understanding of his claims. The post-conviction court then gave Salazar thirty days within which to file any additional briefing or authority. The post-conviction court also directed the parties to submit proposed findings within thirty days of the court's order.

On June 2, 2010, the State filed its proposed findings of fact and conclusions thereon. On June 4, 2010, Salazar filed a motion for continuance and clarification. On June 7, 2010, the post-conviction court entered an order indicating that the pending matter was the filing of facts and conclusions thereon and gave Salazar until July 16, 2010 to file his proposed findings. Salazar filed numerous motions, including a motion for a change of judge, a memorandum of law in support of a motion to compel discovery, motions for continuance and clarification, requests for interrogatories, subpoenas, a seventy-one-page petition for

post-conviction relief, and a motion for leave to withdraw the petition for post-conviction relief.

On December 13, 2010, the State filed a motion for summary disposition. Pursuant to the post-conviction court's order requiring it to do so, the State then filed a response to Salazar's motions. On December 22, 2010, the post-conviction court entered an order denying Salazar's motions and granting the State's motion for summary disposition, but did not include findings of fact and conclusions of law.

Salazar initiated an appeal of the trial court's order denying his motions and granting the State's motion for summary disposition. On November 17, 2011, the State filed a motion for remand, asking this court to direct the post-conviction court to issue findings of fact and conclusions thereon. That motion was granted on December 5, 2011, and the appeal was stayed. On January 28, 2012, the post-conviction court issued its findings of fact and conclusions thereon.[1] Salazar now appeals.

## DISCUSSION AND DECISION

Post-conviction proceedings do not afford the petitioner an opportunity for a super appeal, but rather, provide the opportunity to raise issues that were unknown or unavailable at the time of the original trial or the direct appeal. *Ben-Yisrayl v. State*, 738 N.E.2d 253, 258 (Ind. 2000), *cert. denied*, 534 U.S. 1164 (2002); *Wieland v. State*, 848 N.E.2d 679, 681 (Ind. Ct. App. 2006), *trans. denied, cert. denied*, 549 U.S. 1038 (2006). The proceedings do not

---

[1] We commend the post-conviction court for the thoroughness and clarity of its findings and order, which have greatly facilitated our appellate review of this matter.

4

substitute for a direct appeal and provide only a narrow remedy for subsequent collateral challenges to convictions. *Ben-Yisrayl*, 738 N.E.2d at 258. The petitioner for post-conviction relief bears the burden of proving the grounds by a preponderance of the evidence. Ind. Post-Conviction Rule 1(5).

When a petitioner appeals a denial of post-conviction relief, he appeals from a negative judgment. *Fisher v. State*, 878 N.E.2d 457, 463 (Ind. Ct. App. 2007), *trans. denied.* The petitioner must establish that the evidence as a whole unmistakably and unerringly leads to a conclusion contrary to that of the post-conviction court. *Id.* We will disturb a post-conviction court's decision as being contrary to law only where the evidence is without conflict and leads to but one conclusion, and the post-conviction court has reached the opposite conclusion. *Wright v. State*, 881 N.E.2d 1018, 1022 (Ind. Ct. App. 2008), *trans. denied.* The post-conviction court is the sole judge of the weight of the evidence and the credibility of witnesses. *Lindsey v. State*, 888 N.E.2d 319, 322 (Ind. Ct. App. 2008), *trans. denied.* We accept the post-conviction court's findings of fact unless they are clearly erroneous, and no deference is give to its conclusions of law. *Fisher*, 878 N.E.2d at 463.

Subsequent collateral challenges to convictions must be based on grounds enumerated in the post-conviction rules. *Timberlake v. State*, 753 N.E.2d 591, 597 (Ind. 2001) (citing P-C.R. 1(1); *Rouster v. State*, 705 N.E.2d 999, 1003 (Ind. 1999)). As a general rule, most free-standing claims of error are not available in a post-conviction proceeding because of the doctrines of waiver and res judicata. *Id.* at 598.

In this case, the post-conviction court granted the State's request for summary

disposition of Salazar's petition for post-conviction relief. While "courts appear to use the terms 'denial' and 'dismissal' interchangeably in the context of post-conviction relief, they are not synonymous." *Joseph v. State*, 603 N.E.2d 873, 876 (Ind. Ct. App. 1992). The difference lies in how each arises. *Id*. A petition for post-conviction relief may be "summarily *denied* when the pleadings conclusively show the petitioner is entitled to no relief." *Id*. (emphasis supplied) (citing P-C.R. 1(4)(f)). "The petition may be *dismissed* when the petitioner has failed to comply with the trial rules or when he has failed to take action for a period of 60 days." *Id*. (emphasis supplied) (citing Ind. Trial Rule 41(E)).

"A trial court is not permitted to summarily deny a petition for post-conviction relief unless 'it appears from the pleadings, depositions, answers to interrogatories, admissions, stipulations of fact, and any affidavits submitted, that there is no genuine issue of material fact and [the State] is entitled to judgment as a matter of law.'" *Evolga v. State*, 722 N.E.2d 370, 372 (Ind. Ct. App. 2000) (quoting P-C.R. 1, §4(g)). "If an issue of material fact is raised by the allegations of the petition, "the court *shall hold* an evidentiary hearing as soon as reasonably possible." *Id*. (emphasis added). "A hearing is mandatory even when the petitioner only has a remote chance of establishing his claim." *Id*. "An evidentiary hearing is not required, however, in the absence of "specific factual allegations in support of the claim[s]" alleged by the petitioner." *Id*. (quoting *Sherwood v. State*, 453 N.E.2d 187, 189 (Ind. 1983)).

The issues Salazar raises here on appeal follow:

> 1.) Whether the post-conviction court erred by not granting Salazar's motion for discovery related to his allegation that trial counsel was

ineffective for filing a motion for a competency hearing against Salazar's wishes;

2.) Whether the post-conviction court erred by not granting Salazar's motion for discovery related to his allegation of the destruction of the armed robbery video footage;

3.) Whether the post-conviction court erred by not granting Salazar's motion for discovery related to a restraining order obtained by a person named Wrikke Cooksey;

4.) Whether the post-conviction court erred by not granting Salazar's motion for discovery related to ticket dispenser forensic findings;

5.) Whether the post-conviction court erred by not granting Salazar's motion for discovery related to certified BMV records;

6.) Whether the post-conviction court erred by not granting Salazar's motion for discovery related to emergency 911 calls;

7.) Whether the post-conviction court erred by not granting Salazar's motion for discovery related to the sheriff's policies and procedures concerning the administrative preservation and destruction of breath tests and Salazar's breath test records;

8.) Whether the post-conviction court erred by not granting Salazar's motion for discovery related to a petition to revoke;

9.) Whether the post-conviction court erred by not granting Salazar's motion for interrogatories regarding the circumstances of Salazar's attempted suicide and other matters while Salazar was incarcerated;

10.) Whether the post-conviction court erred by denying Salazar's request for subpoenas to the former county prosecutor, trial and appellate attorneys, and other unnamed individuals;

11.) Whether the post-conviction court erred by denying Salazar's request for an extension of time;

12.) Whether the post-conviction court erred by denying Salazar's request for a change of judge;

13.) Whether the post-conviction court erred by denying Salazar's request to withdraw his petition for post-conviction relief; and

14.) Whether the post-conviction court erred by denying Salazar's request to amend his petition for post-conviction relief.

At trial, Salazar pleaded guilty to one count of Class B felony dealing in cocaine and to one count of Class B felony dealing in a controlled substance. The plea agreement provided that sentencing would be left to the trial court's discretion, but that the sentences for each count would be served consecutively. The trial court sentenced Salazar to two fifteen-year terms for an aggregate sentence of thirty years executed. Most of the issues set out above, have no connection with Salazar's convictions, but rather have to do with occurrences that allegedly took place after Salazar's arrest.

Salazar appears to argue that his trial counsel was ineffective by failing to fully investigate the State's evidence on Cause 0012 and that he would have preferred to take those charges to trial. The offenses charged in Cause 0012 alleged the commission of two counts of armed robbery, one count of intimidation while armed with a deadly weapon, and one count of pointing a firearm. The charges in Cause 0032 involved thirteen drug-related offenses involving informants who were working with local law enforcement. After plea negotiations, Salazar pleaded guilty to two offenses under Cause 0032, and the remaining charges were dismissed as were all of the charges under Cause 0012.

In order to establish a post-conviction claim alleging a violation of the Sixth Amendment right to effective assistance of counsel, a petitioner must establish the two components set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). First, a defendant

8

must show that counsel's performance was deficient. *Strickland*, 466 U.S. at 687. The defendant must show that trial counsel's representation fell below an objective standard of reasonableness and that the errors made were so serious that counsel was not functioning as guaranteed to the defendant by the Sixth Amendment. *Id.* Second, the petitioner must show that counsel's deficient performance prejudiced the defense. *Id.* The petitioner must show that counsel's errors were so serious that the petitioner was denied a fair trial. *Id.*

Cause 0012 and Cause 0032 were two separate actions. Any evidence of the armed robbery video or a witness's sworn statement about the armed robbery would have been irrelevant because those charges were dismissed pursuant to the plea agreement. Furthermore, Salazar has failed to show how an acquittal on Cause 0012 would have resulted in a different outcome on the drug-dealing charges. Salazar has failed to establish that his trial counsel's performance fell below an objective standard of reasonableness. Summary disposition was appropriate because there was no genuine issue of material fact. P-C.R. 1 §4.

Salazar claims that the post-conviction court erred by denying him the opportunity to conduct discovery and to subpoena witnesses. He also claims that he needed to conduct discovery to establish his claim that his trial counsel was ineffective for requesting a competency hearing. First, no discovery was required regarding his trial counsel's request for a competency hearing. Salazar has failed to establish that his trial counsel's performance in requesting the competency hearing fell below professional norms, or that he was prejudiced by the competency hearing.

Salazar's other discovery requests include information pertaining to the destruction of armed robbery video footage, the restraining order obtained by Wrikke Cooksey, ticket dispenser forensic findings, certified BMV records, emergency 911 calls, sheriff's policies and procedures concerning the administrative preservation and destruction of breath tests and Salazar's breath test records, petition to revoke, interrogatories regarding Salazar's attempted suicide and other matters while Salazar was incarcerated. However, Salazar has failed to show how any of that information pertains to his convictions for dealing in cocaine and dealing in a controlled substance. We conclude that the post-conviction court properly denied Salazar's requests because they were irrelevant to his claim for post-conviction relief. No discovery was necessary.

As for Salazar's requests to issue subpoenas to witnesses, the post-conviction court properly denied them. Salazar claimed that the former prosecutor would have testified about inmate abuse and the failure to charge Salazar with criminal mischief. However, neither of those topics have anything to do with Salazar's underlying convictions. Complaints about inmate abuse should be pursued via administrative avenues. They are not relevant to a petitioner's collateral attack of the validity of the criminal convictions.

Furthermore, the post-conviction court properly denied Salazar's request to issue subpoenas to his trial and appellate attorneys. Salazar has failed to state a viable ineffective assistance of counsel claim. As for the other subpoena issues, Salazar failed to provide the names of the individuals to whom he wished to send the subpoenas or their contact

information in his original request. We find no error in the post-conviction court's decision to deny his request.

In addition, Salazar claims that the post-conviction court erred by denying him an extension of time in which to hold an evidentiary hearing. That claim fails, however, because the majority of allegations of error have nothing to do with his two Class B felony drug convictions. An evidentiary hearing would have been futile because Salazar has failed to raise a genuine issue of material fact pertaining to his convictions.

Salazar's motion for a change of judge was also denied by the post-conviction court. Indiana Post Conviction Rule 1(4)(b) provides that, within ten days of filing a petition for post-conviction relief, the petitioner may request a change of judge by filing an affidavit in which the petitioner supports his belief that the judge has a personal bias or prejudice against the petitioner. "[A] change of judge is neither 'automatic' nor 'discretionary,' [but] calls for a legal determination by the trial court." *Lambert v. State*, 743 N.E.2d 719, 728 (Ind. 2001) (quoting *Sturgeon v. State*, 719 N.E.2d 1173, 1181 (Ind. 1999)). We presume that a judge is not biased against a party. *Id.* We review the denial of a motion for a change of judge under a clearly erroneous standard. *Azania v. State*, 778 N.E.2d 1253, 1261 (Ind. 2002). A decision is clearly erroneous if we are left with a definite and firm conviction that a mistake has been made. *Sturgeon*, 719 N.E.2d at 1182.

For a change of judge to be required, a petitioner must show that the judge has a personal bias. *Bahm v. State*, 789 N.E.2d 50, 54 (Ind. Ct. App. 2003). Personal bias "stems from an extrajudicial source meaning a source separate from the evidence and argument

11

presented at the proceedings." *Lambert*, 743 N.E.2d at 728.  The mere assertion of bias and prejudice does not prove its existence.  *Massey v. State*, 803 N.E.2d 1133, 1138-39 (Ind. Ct. App. 2004).  To rebut the presumption that a judge is not biased against a party, the petitioner must establish from the judge's conduct actual bias or prejudice that places the petitioner in jeopardy.  *Id*.  "Such bias and prejudice exists only where there is an undisputed claim or where the judge expressed an opinion of the controversy over which the judge was presiding."  *Id*.

We first note that Salazar's motion for change of judge was untimely.  Salazar filed his petition for post-conviction relief on October 19, 2009.  *Appellant's App*. at 10-28. Salazar filed his motion for change of judge more than eight months later on June 28, 2010. *Id*. at 252-60.  The post-conviction court properly denied the motion on December 22, 2010 because it was untimely filed.  Furthermore, the motion was without merit.  Salazar describes the post-conviction court's actions as a "deliberate [bait] and switch ambush" which deprived him of the ability to present live testimony and other relevant evidence.  *Appellant's Br*. at 51.  Adverse rulings on judicial matters do not indicate a personal bias or prejudice, nor typically do statements at sentencing hearings."  *Bahm*, 789 N.E.2d at 55.  Salazar's characterizations of the post-conviction court's rulings as "obviously bogus" do not support his claim that his motion should have been granted.  *Appellant's Br*. at 54.  Salazar has failed to establish that the motion for change of judge was erroneously denied.

Salazar also contends that the post-conviction court erred by denying his motions to withdraw his petition for post-conviction relief and file an amended petition. Indiana Post-Conviction Rule 1, Section 4(c) states in pertinent part as follows:

> At any time prior to entry of judgment the court may grant leave to withdraw the petition. The petitioner shall be given leave to amend the petition as a matter of right no later than sixty [60] days prior to the date the petition has been set for trial. Any later amendment of the petition shall be by leave of the court.

The evidentiary hearing date set in Salazar's case was May 6, 2010. Salazar filed his amended petition after that date, thus it was within the discretion of the post-conviction court to grant or deny Salazar permission to withdraw the original petition and file the amended petition. An examination of Salazar's affidavit in support of the petition for post-conviction relief leads us to conclude that the post-conviction court did not abuse its discretion. Instead of including evidence related to his drug-dealing convictions, Salazar alleged that his meals in prison are being altered by fecal matter and semen and included a description of his own masturbation and study of his semen. He described his allegation of sexual abuse at the Tippecanoe County Jail. These matters are not appropriate for review under the procedures providing for post-conviction relief, but rather should be reviewed via administrative procedures. Salazar has failed to establish that the post-conviction court abused its discretion in denying his motions to withdraw his petition and file an amended petition for post-conviction relief.

Affirmed.

BAKER, J., and BROWN, J., concur.

13